Mr. Chief Justice Shasxet
delivered the opinion of the court.
There are several points made in the argument of this case, principally in relation to the legality of the jury, and jury process.
First, it is contended that the petit jury were neither drawn according to the statute nor common law. The venire was issued in term time,.for thirty-six jurors returnable in six days, and tested *241 of the same time. By the statute, the panel of jurors is to be' drawn in term time, or in vacation, and a venire is directed to issue returnable to the next term. The grand jury is to be drawn from the number appearing, and the balance are to be sworn as petit jurors for the term, according to the form of the oath prescribed. To my mind, it is obvious that these jurors were not intended exclusively to form the panel for the trial of criminal causes. There is a different section of the statute from which the circuit courts derive criminal jurisdiction, and the powers necessary to enforce it. By the sixteenth section of the circuit court law, it is declared, that they shall “ have and exercise all the powers incident, or belonging to a court of oyer and terminer, and general jail delivery.”
The terms used in the statute, are sufficiently broad, in the absence of express legislative provisions, to vest in the circuit courts, not only the subject matter of jurisdiction pertaining to the courts of oyer and terminer, and general jail delivery, but also to confer on them, all the incidents or necessary means of enforcing their jurisdiction.
The judges at the assize in England, sit by virtue of five different commissions or authorities, two of which are mentioned in our statute, as conferred upon the circuit courts, to wit, oyer and terminer, and general jail delivery. By the first, they are to inquire, hear, and determine, of all felonies and misdemeanors found by indictment at the same term, and cannot try indictments previously found. By the second they can try every prisoner that is in custody when the term commences. In order to exercise jurisdiction under the first named commission, it is proper, and indeed especially necessary, that they should have power to summon and empannel a jury at the same time, otherwise their powers could not be enforced. It is even said, that they cannot issue jury process until issue joined, but it is clear that they may issue a venire and make it returnable the same day, or any day during the term, according to the common law; and the same power may be exercised as a court of jail delivery. 1 Chitty’s C. L. 508, 513; 4 Hawkins’ Pleas of the Crown, 376-7; Cro. Car. 315; 3 Bacon’s Abridgment, 736. There is thus far, no irregularity in the venire *242 ill this particular, and this may answer also the objection made to the teste of the venire.
It is next urged that the venire at common law could only issue for twelve jurors, but this position is not sustained by the authorities. They are clear that a greater number might., and indeed, should be summoned. 3 Thomas’s Coke, 459; 1 Chitty’s C. L. 505; 2 Dallas, 341.
There is an objection taken to the caption of the indictment, because it is not shown that the grand jury were “then and there”, sworn. Lord Hale, in the form which he has given, 1 Chitty’s C. C., 327, has omitted the words, “ then and there,” ivhich he probably would not have done, if he had deemed them material. Chitty himself is more explicit on this subject, and says in express terms, that these words are unnecessary, and cites many authorities in support of his position; 1 Chitty’s C. L. 334. The caption, as it is made up in our courts, is the mere ministerial act of the clerk in making out his record, and I know of no rule that requires it to be computed before the trial.
Justice Kent, in the case cited from 3 Johnson’s Cases, admits it to be an objection t'o form, merely resting on positive authority; and, with due deference, I think the weight of authority is against it. The case cited, was removed to the supreme court, by cer-tiorari, and was then to be tried at the circuit, such being the course in that state.
It is also' said that it does not appear with sufficient certainty that the grand jury were of Wilkinson county. As a principle, it is evidently true that they should appear to be of the county, and I think the record is within the rule. The venire by which the grand jury were summoned, is set out at length, and shows that the persons drawn, were of the county, and I do not think that that showing can be wholly disregarded, it being a part of the record. But the indictment itself as fully shows them to be of the county, as did the indictment in Bird’s case. That they are called the grand jurors of the state of Mississippi, can be no objection, it being true. They are emphatically, the grand jurors of the state, being authorised to inquire concerning offences against the state. This is the form given in the books, and pursued in the United States courts, and I think it without objections.
*243 Another objection is, that it does not appear that a list or panel of the jury were served upon the defendant. I do not think the record sustains the objection. The language of the record is this; “served a true copy of the indictment, venire facias, and venire on the prisoner.” The word “ venire,” was no doubt, intended to mean the panel, but this question is not now open to decision, unless the defect could i be made clearly to appear, since it was decided in the case of The State v. Johnson, Walker’s Reports, 396, that by going to trial, the prisoner waived the privilege. The only remaining point which deserves notice, arises out of the language used in the special venire, which commanded the sheriff to “ summon thirty-six good and lawful men of his county, and who are, in no wise, of kin to James Shaffer, and residing as near as may be to the place where the murder was committed, &c.” It is argued with much plausibility, that the direction to summon the jury “ as near as may be,” to the place of the offence, was an abridgment of the prisoner’s constitutional right to be tried by a jury of the county.
The common law was particularly careful in securing to individuals a trial by the jury of the neighborhood or visne, and hence it required, that the jury, or at least a part of them, should be of the hundred in which the cause of action or offence occurred, and if they were not, it was a cause of challenge. The rule proceeded from the reason, that the inhabitants of the neighborhood, were more intimately acquainted with the merits of the cause of controversy, and, therefore, better prepared to decide. This was found in some cases to be productive of mischief, and delay, because, at times, a sufficient number of hundreders could not be obtained, and because jurors permitted their prejudices to have an influence in the formation of their verdict. The courts, therefore, relaxed the rule, and it was ultimately changed in civil cases, by the 4 & 5 Anne, chapter 16, which authorised the taking the jury from the county.
Under this statute it was held to be no cause of challenge that part of the jury were not from the visne, or neighborhood; and certainly, it was never held to be cause of challenge, after the enactment, that the jury, or any part of it, were from the hundred and not from the body of the county generally.
*244 The statute mentioned, did not extend to criminal cases, and afterwards, another was passed, in the reign of George II, which included prosecutions, or penal statutes, leaving prosecutions for crimes still unaltered. But the practice in criminal prosecutions also, changed, and the direction in the venire was looked upon as mere form, and the jury were selected. from the body of the county, without the least regard to the visne of the indictment. 3 Thomas’s Coke, 464, note 8. So fax as the law was altered by statute, the principal object seems to have been to prevent captious objections after trial, for the want of hundreders, and the statutory provisions commenced by making a verdict cure the defect, and ultimately authorised the taking of the jury from the body of the county. The practice in criminal cases was made to conform to it, and objections for want of hundreders discontinued, until it went out of use, and was ultimately abolished by statute. The rule of the common law evidently had its origin in a spirit of justice and humanity towards the accused party, and the abuse of its just and humane indulgence, was one cause of the change. In regard to juries, therefore, in most cases, the visne, or neighborhood, or hundred, is no longer regarded by the laws of England, as it is with us, a county is the smallest subdivision of territory known in the summoning of juries. We are to consider the nature of the privilege secured by our constitution, and for this purpose it may not be amiss to recur to the reasons, independently of those of convenience and justice, which superinduced the security of it, in a permanent manner. The taking of our citizens from their homes and friends to be tried by strangers, without the means of a fair investigation had no doubt due weight in the constitutional arrangement. It was made in the spirit of the common law, to secure to the accused a trial by his neighbors, by constituting the citizens of the county as triers, and excluding such as were of a different county. It is true that there is nothing which confers a right to select from a particular neighborhood, and I think such a construction should be given, as to prevent the selection of a jury from a particular neighborhood, and I think such a construction should be given, as to prevent the selection of a, jury from a particular part of a county, by definitive description; but it may be questioned whether the gene *245 ral terms used in this venire facias, are to be understood as confining the sheriff to any certain limit. Certainly, if the common law be founded in reason, the taking of a jury from a neighborhood cannot be an objection, and the common law principle may serve in some degree, to illustrate the spirit of the constitutional provision.
The words used do not necessarily, and of themselves, comprehend any particular district, but they might be used for oppressive purposes. The words visne or neighborhood are interpreted to mean the county, and they do not seem to be more explicit than the language of the venire. Although the common law principle had its origin in reasons the most favorable to the accused, yet it was found to be attended with bad consequences, as bringing into the jury box, the prejudices and animosities of juries, and Lord Hale gives this as the main reason for the gradual change in the law. It is certainly the object in the law, to give to the accused an impartial jury, and any rule which would tend to impair the object, should not be sanctioned.
I do not think'the terms used imposed a restraint on the sheriff, yet he might so use the power to the injury of the party. I strongly incline, on the whole view of this question, to think that the words of the venire did not direct, necessarily, the sheriff to the particular neighborhood, but as my brother judge is very positive on the other side of the question, and as I entertain strong doubts, I will yield in favor of him.
The other points in the case I do not think sustainable; the authorities are, to my mind, clear.
Judgment reversed.